Joseph E. Sarachek, (NY Bar No. 2163228) *pro hac vice*
Zachary E. Mazur, (NY Bar No. 5706726) *pro hac vice*
Sarachek Law Firm
670 White Plains Road #PH
Scarsdale, New York 10583
joe@saracheklawfirm.com, (646) 517-5420
zachary@saracheklawfirm.com (646) 519-4396
*Special Counsel for the Trustee*

Joseph A. McCormick, Jr. (016221977)
Paul Pflumm (006912002)
McDowell Law, PC
46 West Main Street
Maple Shade, NJ 08052
(856) 482-5544
jmccormick@mcdowelllegal.com
ppflumm@mcdlowelllegal.com
*Attorneys for Trustee*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re<br><br>SCHMIDTY KICKS LLC<br><br>Debtor. | Case No. 23-10412-JNP<br><br>Adv. No. 23-<br><br>Chapter 7<br><br>Honorable Jerrold N. Poslusny, Jr. |
| JOSEPH D. MARCHAND, in his capacity as CHAPTER 7 TRUSTEE<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN EXPRESS NATIONAL BANK<br><br>Defendant. | **ADVERSARY COMPLAINT FOR AVOIDANCE OF TRANSFERS AND FOR RELATED RELIEF** |

Joseph D. Marchand, in his capacity as Chapter 7 Trustee (the "Plaintiff" or "Trustee") of Schmidty Kicks LLC, the Chapter 7 debtor, ("Schmidty Kicks" or the "Debtor") by and through his Special Counsel, alleges as follows:

1

## NATURE OF THE ACTION

1. Schmidty Kicks was an online wholesaler and retailer of high-end, name brand sneakers based in Pennsauken, New Jersey. The company was founded by Brett Schmidt ("Schmidt") and run by him at all relevant times.

2. Since 2019, Schmidty Kicks' main supplier was Zadeh Kicks LLC ("Zadeh Kicks"), an Oregon limited liability company which held itself out as a premium-brand sneaker resale business focused on yet-to-be-released sneakers. Schmidty Kicks processed nearly all of its payments to Zadeh Kicks using the payment network of defendant American Express National Bank ("Amex" or "Defendant").

3. By May 2022, news spread that Zadeh Kicks was under investigation for fraud by the Federal Bureau of Investigation. It soon became clear that Zadeh Kicks was running a massive sneaker fraud and that it had no way of delivering hundreds of thousands of pairs of sneakers that it owed to Schmidty Kicks and other customers.

4. It is now evident that, given the fraud that Zadeh Kicks was perpetrating on its customers, including Schmidty Kicks, the Debtor has been insolvent since at least as far back as January 2020.

5. Following Zadeh Kicks collapse, the Debtor contacted Defendant to challenge $17,413,686.72 in fraudulent Amex charges from Zadeh Kicks, of which $11,681,722.81 has already been credited to Schmidty Kicks' Amex account.

6. The Zadeh Kicks fraud ultimately led to the Debtor's bankruptcy filing, because the Debtor had ultimately promised much of the Zadeh Kicks' fictitious stock to the Debtor's own customers. Those customers, who are the ultimate victims of the Zadeh Kicks fraud, represent the vast majority of the Debtor's creditors in this proceeding.

7. The purpose of this adversary proceeding is to avoid and recover $17,413,686.72 in transfers from Debtor to Defendant, made in the four years prior to the bankruptcy filing, for which Debtor received no value.

8. As pled in the alternative, this adversary proceedings also seeks a turnover order, directing Defendant to surrender to the Plaintiff the amount that it credited to the Debtor's account, as well as allegations of other common law causes of action against the Defendant.

## JURISDICTION AND PARTIES

9. Schmidty Kicks filed a voluntary Petition under Chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") on January 17, 2023 (the "Petition Date").

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157, and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012.

11. This is an adversary proceeding to avoid transfers pursuant to 11 U.S.C. §§ 544, 548, and N.J.S.A. 25:2-25 *et seq*; to recover property transferred pursuant to 11 U.S.C. §§ 542 and 550; for turnover of property of the Estate; for breach of contract and for related relief.

12. Venue of this adversary proceeding in this District is proper pursuant to 28 U.S.C. § 1409.

13. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(E), (H) and (O).

14. Plaintiff hereby consents to the entry of a final order or judgment by the Bankruptcy Court, pursuant to Fed R. Bankr. P.7008(a).

15. Plaintiff is Joseph D. Marchand, in his capacity as Chapter 7 Trustee of Schmidty Kicks LLC, the Chapter 7 Debtor in the matter captioned *In Re Schmidty Kicks LLC,* Case No: BK-23-

10412-JNP in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy").

16. Schmidty Kicks is a limited liability company formed under the laws of the State of New Jersey with its principal place of business in the State of New Jersey.

17. On information and belief, Defendant American Express National Bank is a national bank with offices located at 115 West Towne Ridge Parkway, Sandy, UT 84070.

## FACTUAL BACKGROUND

*History of Schmidty Kicks*

18. Schmidty Kicks was formed to source and sell athletic apparel with a focus on the sneaker collecting market. Through its website, Schmidty Kicks would offer preorders for anticipated shoe releases four to six months ahead of their estimated availability date, and then it would track releases and secure stock from manufacturers' limited availability to fulfill those orders.

19. Starting in 2019, Schmidty Kicks began to source coveted, limited-edition sneakers from supplier Zadeh Kicks in order to resell those sneakers to its own customer base.

20. In the period of 2019 through 2021, Schmidty Kicks purchased over $19 million worth of sneakers from Zadeh Kicks, with all payments made through Schmidty Kicks' payment card issued by defendant Amex, and with all transactions being processed through Zadeh Kicks' PayPal merchant account.

21. Zadeh Kicks permitted, even encouraged, customers like Schmidty Kicks to preorder and pay, weeks or months in advance, for sneaker models before they were even released by manufacturers such as Nike, which orders Zadeh Kicks would then be obligated

to source, fulfill and ship to customers when the sneakers were in fact released by and received from the manufacturers.

22. The Debtor relied on Zadeh Kicks to fulfill its customers' orders, purchasing sneakers wholesale for delivery to its own retail operations and also purchased shoes "on consignment" – an arrangement where Schmidty Kicks would fund the purchase of the shoes, but Zadeh Kicks would presumably retain possession of the purchased inventory and act as a reseller to assorted third parties in return for part of the profits.

23. Some orders were fulfilled by Zadeh Kicks, and Schmidty Kicks received deliveries of actual sneakers. Many more orders, however, were only partially fulfilled. As time went on, the Debtor would receive only a few dozen (or less) pairs of shoes against the thousands of pairs ordered.

24. When delivery orders went unfulfilled or when Zadeh Kicks reported consignment sales of Schmidty Kicks' purported inventory, Zadeh Kicks issued the Debtor gift cards which could be applied as credit on future orders. Often these future orders also went unfulfilled, or Zadeh Kicks would report further sales of purported consignment inventory, and Zadeh Kicks would then issue replacement gift cards, including the value of any new payments made with the Schmidty Kicks Amex card.

25. As it turned out, Zadeh Kicks had no way of actually acquiring the quantity of sneakers needed to fill the preorders received. Increasingly, Schmidty Kicks and similarly situated Zadeh Kicks clients were either left with unfulfilled orders or they were induced to accept worthless Zadeh Kicks gift cards. For sneakers it reported to hold in consignment, Zadeh Kicks simply misrepresented that inventory of sneakers to customers like Schmidty Kicks.

26. By April 2022, an insolvent Zadeh Kicks owed customers like Schmidty Kicks more than $70 million in undelivered sneakers and unknown additional millions held by customers in worthless gift cards.

27. All told, the Debtor submitted over 600 orders to Zadeh Kicks for tens of thousands of pairs of sneakers, paying Zadeh Kicks $19,333,363 using the Schmidty Kicks Amex Card, as reflected on the account statements.

***The Demise of Zadeh Kicks***

28. On May 19, 2022, the owner of Zadeh Kicks petitioned the Circuit Court for the State of Oregon for the County of Lane (the "Oregon Court") for voluntary dissolution under Court supervision and the appointment of a receiver in order to protect and preserve the assets belonging to the Receivership Estate and to assist in the dissolution of the business.

29. On May 20, 2022, the Oregon Court entered an Order Appointing Receiver, which appointed David P. Stapleton as the receiver (the "Receiver") of the assets of Zadeh Kicks.

30. It is now unclear through what means, legitimate or otherwise, Zadeh Kicks would have been able to guarantee access to such pre-release sneakers in order to fulfill voluminous preorders.

31. Michael Malekzadeh ("Malekzadeh"), the principal of Zadeh Kicks, was subsequently charged by criminal information with wire fraud, conspiracy to commit bank fraud, and money laundering, for running what the Department of Justice is describing as a massive sneaker fraud and Ponzi Scheme. A copy of the criminal information against Malekzadeh and an alleged co-conspirator is attached hereto as **Exhibit A**.

32. When Zadeh Kicks ceased operations, Schmidty Kicks had unfulfilled orders representing the majority of the funds that Schmidty Kicks had ever transferred to Zadeh Kicks via its Amex card.

33. Of the $19.3 million in total transfers from the Schmidty Kicks Amex card to Zadeh Kicks, over $17 million was ultimately paid for orders of sneakers that it never received and for supposed consignment inventory that never existed.

*34.* Knowing now in hindsight that Zadeh Kicks' business was a fraud, and that the gift cards it issued were worthless, it is clear now ordering from Zadeh Kicks and paying for those orders caused the Debtor's insolvency. Therefore, the date of insolvency is no later than the date of the first fully unfulfilled Zadeh Kicks order, January 4, 2020 (the "Insolvency Date").

***Role of Defendant in the Zadeh Kicks – Schmidty Kicks Relationship***

35. Schmidty Kicks holds a Business Platinum Card account with the Defendant, along with the associated charge card (the "Amex Card"). The controlling contractual terms on this account are contained within the Business Platinum Card Cardholder Agreement (the "Cardholder Agreement"), which is attached herein as **Exhibit B**.

36. On information and belief, Zadeh Kicks held a merchant account with the online store platform of Shopify Inc. ("Shopify") to manage orders.

37. On information and belief, Zadeh Kicks chose PayPal, Inc. ("PayPal") as the credit card payment processor for its orders.

38. When Schmidty Kicks placed orders for inventory at Zadeh Kicks using Zadeh's Shopify storefront, payment was processed by PayPal, which would in turn charge the Schmidty Kicks Amex Card account. After this, Defendant would list the charges as obligations of Schmidty Kicks on its card account statements.

7

39. Under the terms of the Cardholder Agreement, charges made to the Schmidty Kicks Amex Card needed to be satisfied by the end of the billing cycle. Accordingly, subsequent to the posting of the (mostly fraudulent) Zadeh Kicks' charges, corresponding transfers were made to Defendant from Schmidty Kicks' bank account.

40. As part of the Cardholder Agreement, Defendant offered the Debtor (as well as its millions of other cardholders) procedures for disputing fraudulent charges or charges for goods that were never received (the "Dispute Procedure").

41. On information and belief, the Dispute Procedure is further described in the agreement between Defendant and its merchant partners, including the agreement between Defendant and Paypal and/or Zadeh Kicks (the "Merchant Agreement").

42. The Dispute Procedure allowed for cardholders like Schmidty Kicks to reject charges for payments for goods that it never received from the merchant. Subject to Defendant's investigation into the non-receipt of goods, cardholder Schmidty Kicks would have no liability for the disputed charges.

43. Beyond the Dispute Procedure, Defendant generally offered the Debtor (and its other cardholders) assurances that their transactions are protected from fraud, and that chargebacks of fraudulent transactions would be processed and honored.

44. On information and belief, in the months that followed Zadeh Kicks' demise, Defendant processed and honored chargebacks for the vast majority of cardholders that were affected by the Zadeh Kicks fraud, in circumstances that are similar to the Debtor's disputed charges (as discussed *infra*).

*Transfers Made from Schmidty Kicks to Defendant for No Value Received*

45. Defendant received substantial transfers of funds from Schmidty Kicks' bank account during the applicable avoidance periods.

46. Within two years of Petition Date, Defendant received $17,282,209.46 in transfers from the account of Schmidty Kicks LLC (the "Two-Year Transfers"). During this same period, Schmidty Kicks made $10,103,275.78 of orders from Zadeh Kicks for which it did not receive inventory or valuable compensation. As such, $10,103,275.78 of the Two-Year Transfers were made to Defendant for nothing in return (the "Two-Year Avoidable Transfers").

47. Since January 6, 2020[1], Defendant received $25,178,372.69 in transfers from the account of Schmidty Kicks LLC (the "Four-Year Transfers," which are inclusive of the Two-Year Transfers). During this same period, Schmidty Kicks made $17,413,686.72 of orders from Zadeh Kicks for which it did not receive inventory or valuable compensation. As such, $17,413,686.72 of the Four-Year Transfers were made to Defendant for nothing in return (the "Four-Year Avoidable Transfers," which are inclusive of the Two-Year Avoidable Transfers[2]).

48. The Two-Year Transfers and Four-Year Transfers to Amex are detailed more fully in **Exhibit C**, included herein. The disputed Zadeh Kicks charges that form the basis of the Two-Year Avoidable Transfers and Four-Year Avoidable Transfers are detailed more fully in **Exhibit D** included herein.

49. On or around May of 2022, having comprehended that it was one of the victims of the Zadeh Kicks fraud, Schmidty Kicks contacted Defendant to process the appropriate

---

[1] The four-year lookback period extends to January 17, 2019, but this complaint only details transfers made starting with the first unfulfilled Zadeh Kicks' charge on the Amex Card on January 4, 2020, which was followed by the first corresponding transfer from Debtor to Defendant on January 6, 2020, for which the Debtor received no value.

[2] In both Exhibits, the 4 year transfers are inclusive of the 2 year transfers, but Plaintiff does not seek to recover the same sum more than once.

9

chargebacks (the "Chargebacks"[3]) relating to the Four-Year Avoidable Transfers. As a result, and in accordance with the Cardholder Agreement, the Defendant partially accepted and processed chargebacks, disputes, and/or credits in the amount of at least $11,681,722.81 (the "Account Credit," as evidenced by Debtor's November 2022 Amex statement, (the "Nov. 2022 Statement," a true copy of which is included herein as **Exhibit E**).

50. Defendant's Cardholder Agreement provides that if a cardholder like Schmidty Kicks disputes a charge with a merchant and the Defendant credits Schmidty Kicks' account, Schmidty Kicks assigns all associated non-tort claims against the merchant (PayPal and/or Zadeh Kicks) to the Defendant. Cardholder Agreement ¶ "Assigning Claims."

51. The Defendant has credited Schmidty Kicks' account $11,681,722.81, which indicates that Defendant has taken assignment of Debtor's associated rights to pursue claims against Zadeh Kicks and whatever value those claims may have.

52. The Cardholder Agreement further states that once claims have been assigned, Schmidty Kicks cannot pursue the associated claims against Zadeh Kicks. *Id.* Therefore, the Defendant has restricted Schmidty Kicks from pursuing Zadeh Kicks for breach of contract or as a receivership creditor.

53. The purpose of this action is to avoid and recover the Four-Year Avoidable Transfers from Defendant, free and clear of any liens.

54. As pled below in the alterative, this action also seeks from Defendant the turnover of the Account Credit, which is rightful property of Schmidty Kicks' bankruptcy estate.

55. Also pled in the alternative below, this action seeks to hold Defendant liable for damages caused to the Debtor by Defendant's breach of the Cardholder Agreement and

---

[3] The Amex Card charges covered under the Chargebacks are those detailed in Exhibit D, and are equal in value to the Four-Year Avoidable Transfers.

associated Dispute Procedure, as well as breach of implied contract and breach of the implied covenant of good faith and fair dealing.

## FIRST CLAIM FOR RELIEF

*Avoidance and Recovery of Constructive Fraudulent Transfers — Bankruptcy Code Section 548(a)(1)(B)*

56. Plaintiff realleges and incorporates herein Paragraphs 1 through 55, as if fully set forth herein.

57. The Two-Year Avoidable Transfers constituted transfers of the Debtor's property to Defendant.

58. Debtor was insolvent at the time that it made each of the Two-Year Avoidable Transfers.

59. The Two-Year Avoidable Transfers were made by the Debtor to the Defendant without receiving reasonably equivalent value.

60. The Two-Year Avoidable Transfers were made to or for the benefit of Defendant.

61. As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code sections 548(a), 550(a), and 551: (a) avoiding the Two-Year Avoidable Transfers free and clear of any claimed interest of Defendant, (b) directing that the Two-Year Avoidable Transfers be set aside, and (c) recovering such Two-Year Avoidable Transfers or the value thereof from Defendant for the benefit of the Bankruptcy Estate.

## SECOND CLAIM FOR RELIEF

*Avoidance and Recovery of Constructive Fraudulent Transfers – Bankruptcy Code Section 544(b), New Jersey State Law*

62. Plaintiff realleges and incorporates herein Paragraphs 1 through 55, as if fully set forth herein.

11

63. The Four-Year Avoidable Transfers constituted transfers of the Debtors' property to Defendant.

64. Debtor was insolvent at the time that it made each of the Four-Year Avoidable Transfers.

65. The Four-Year Avoidable Transfers were made by the Debtor to Defendant without receiving reasonably equivalent value when the Debtor was insolvent.

66. The Four-Year Avoidable Transfers were made to or for the benefit of Defendant.

67. The Four-Year Avoidable Transfers are avoidable under N.J.S.A. 25:2-27(a) and/or comparable provisions of law in other jurisdictions that have adopted the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act or the Uniform Fraudulent Conveyance Act - by a creditor holding an allowed unsecured claim and thus by Plaintiff pursuant to N.J.S.A. 25:2-29, made applicable here by Bankruptcy Code section 544(b).

68. As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code sections 544(b), 550(a), and 551: (a) avoiding the Four-Year Avoidable Transfers free and clear of any claimed interest of Defendant, (b) directing that the Four-Year Avoidable Transfers be set aside, and (c) recovering such Four-Year Avoidable Transfers or the value thereof from Defendant for the benefit of the Bankruptcy Estate.

## THIRD CLAIM FOR RELIEF

*Turnover of Property, Bankruptcy Code Section 542*

69. Plaintiff realleges and incorporates herein Paragraphs 1 through 55, as if fully set forth herein.

12

70. As of November 18, 2022, the Schmidty Kicks Amex card account has a credit balance of $11,681,722.81, in favor of Debtor, owing to Defendant's partial acceptance and processing of disputes and chargebacks against Zadeh Kicks.

71. According to the Nov. 2022 Statement, this account credit is refundable ("Your credit balance can be applied against future transactions, or you may request a refund.")

72. Because it is refundable on request, this account credit constitutes a debt which is payable on demand, payable on order, or which has matured.

73. As a deposit account balance, this account credit constitutes cash collateral that is property of bankruptcy estate and which the Trustee may use, sell, or lease.  See 11 U.S.C. 363(a)-(b).

74. Defendant currently possesses, maintains custody over, or controls this property.

75. The debtor shall be delivered any property which it may use, sell, or lease by any entity possessing, in custody of, or controlling such property.  11 U.S.C. § 542(a).

76. The debtor shall be delivered payment of debts matured, payable on demand, or payable by order owed by any entity.  11 U.S.C. § 542(b)

77. Therefore, as a result of the foregoing, the Plaintiff is entitled to judgment pursuant to Bankruptcy Code section 542 (a) directing that Defendant deliver the value of the Account Credit to the Plaintiff, and (b) recovering the Account Credit or the value thereof in the amount of $11,681,722.81.

## FOURTH CLAIM FOR RELIEF

*Account Stated – Common Law*

78. Plaintiff realleges and incorporates herein Paragraphs 1 through 55, as if fully set forth herein.

79. Debtor and Defendant have an express agreement in the Cardholder Agreement as to the treatment of chargebacks and disputes and the balance of the account.

80. The first month that a credit appeared on a Schmidty Kicks' Amex card account statement was June of 2022. The credit grew until it reached the amount of the Account Credit on the Nov. 2022 Statement.

81. The Nov. 2022 Statement states that account credits will be refunded if that balance is greater than $1 or on request. Nov. 2022 Statement at 2.

82. Debtor requested payment of the Account Credit.

83. The Account Credit has not been paid to the Debtor, which is against the combined express and implied terms of the Debtor's business relationship with the Defendant and which contradicts the representations made by the Defendant.

84. Debtor submitted chargeback requests and disputes in the amount of the Four-Year Avoidable Transfers pursuant to the Cardholder Agreement.

85. Of that amount, Defendant has acknowledged the amount of the Account Credit, and the Nov. 2022 Statement indicates that the Account Credit is owed to Schmidty Kicks.

86. Plaintiff alleges that the entirety of the Four-Year Avoidable Transfers is owed under the Cardholder Agreement and has initiated disputes and Chargebacks for the same. Notwithstanding, Defendant agrees that at least the amount of the Account Balance is owed and due currently.

87. The Cardholder Agreement states that the controlling law for disputes with the Defendant is the law of Utah.

88. Under Utah law claim for account stated has three elements: "(1) a transaction between the parties giving rise to a debt, (2) an agreement between the parties on the amount

14

Case 23-10412-JNP    Doc 44    Filed 03/22/23    Entered 03/22/23 10:33:29    Desc Main
Document    Page 15 of 19

of the debt, and (3) an express or implied promise by the debtor to pay the amount owed." *Mrs. Fields Franchising, LLC v. MFGPC*, 721 Fed.Appx. 755 (10th Cir. 2018).

89. Therefore, as a result of the foregoing, Plaintiff is entitled to a judgment for damages in the amount of the Account Credit, or $11,681,722.81.

**FIFTH CLAIM FOR RELIEF**

*Breach of Contract*

90. Plaintiff realleges and incorporates herein Paragraphs 1 through 55, as if fully set forth herein.

91. Debtor and Defendant entered into the Cardholder Agreement relating to Debtor's account and to the associated Amex Card, including the benefit of the Dispute Procedure.

92. The Debtor relied on the availability of Defendant's Dispute Procedure when it used its Amex account to make purchases from Zadeh Kicks' online store.

93. The Debtor also relied on Defendant honoring its Merchant Agreement with PayPal and/or Zadeh Kicks.

94. At all relevant times, Debtor took all reasonable care to protect its account details.

95. Defendant received consideration from the Debtor in the form of cardholder fees, as well as processing fees from merchants like PayPal and/or Zadeh Kicks.

96. Zadeh Kicks made at least $17,413,686.72 in fraudulent charges to the Debtor's Amex account for the sale of goods that did not exist and/or were never delivered.

97. According to the terms of the Cardholder Agreement and the Dispute Procedure, Debtor is not responsible for those fraudulent charges. Upon the entry of a credit to Debtor's account, Defendant took assignment of all rights and claims that Debtor had against Zadeh Kicks.

15

98. Defendant has breached the terms of the agreement with the Debtor by failing to honor the Cardholder Agreement, the Merchant Agreement and the Dispute Procedure.

99. As a result of Defendant's breach, Debtor was harmed economically in an amount not less than $17,413,686.72.

100. Therefore, as a result of the foregoing, Plaintiff is entitled to a judgment for damages against Defendant for breach of contract in the amount of $17,413,686.72.

### SIXTH CLAIM FOR RELIEF

*Breach of Implied Contract*

101. Plaintiff realleges and incorporates herein Paragraphs 1 through 55, as if fully set forth herein.

102. Debtor and Defendant entered into a tacit understanding with respect to the Debtor's rights and responsibilities as an Amex Card holder.

103. Part of that tacit understanding is that Debtor would only be liable for legitimate charges on its Amex Card.

104. Debtor and other cardholders are led to believe by Defendant that they will not be held liable for fraudulent charges on their Amex cards.

105. It is generally understood that Defendant will process and refund properly processed chargebacks that are initiated by cardholders with respect to fraudulent charges.

106. On information and belief Defendant did, in fact, process and refund the fraudulent charges that were made to other victims of the Zadeh Kicks' fraud, where their Amex cards were charged as part of the fraud.

107. Defendant received valuable consideration under the implied contract, in the form of processing fees and hefty merchant fees from Zadeh Kicks and/or PayPal.

108. Defendant has breached the terms of the implied contract with the Debtor by failing to honor the Chargebacks.

109. As a result of Defendant's breach, Debtor was harmed economically in an amount not less than $17,413,686.72.

110. Therefore, as a result of the foregoing, Plaintiff is entitled to a judgment for damages against Defendant for breach of implied contract in the amount of $17,413,686.72.

## SEVENTH CLAIM FOR RELIEF

*Breach of Implied Covenant of Good Faith and Fair Dealing*

111. Plaintiff realleges and incorporates herein Paragraphs 1 through 55, as if fully set forth herein.

112. Debtor entered into the Cardholder Agreement and then used its Amex Card at Zadeh Kicks' online store with the reasonable expectation that Debtor would be protected from liability for fraudulent transactions.

113. Debtor made the Four-Year Avoidable Transfers to Defendant under the expectation that those transfers would not be used to offset or diminish liabilities that were based on fraudulent charges on its Amex Card.

114. Debtor communicated the chargeback requests to Defendant on the understanding that they would be honored as to fraudulent charges, and that the Chargebacks would be properly handled, as they were for the other victims of the Zadeh Kicks' fraud.

115. Debtor relied on the implied covenant of good faith and fair dealing with respect to its usage of the Amex card, the Four-Year Avoidable Transfers, as well as the subsequent Chargebacks.

116. Debtor relied on the implied covenant of good faith and fair dealing when it requested the withdrawal of the Account Credit.

117. Defendant breached the implied covenant of good faith and fair dealing when it failed to honor the Chargebacks and failed to honor the withdrawal of the Account Credit.

118. As a result of Defendant's breach, Debtor was harmed economically in an amount not less than $17,413,686.72.

119. Therefore, as a result of the foregoing, Plaintiff is entitled to a judgment for damages against Defendant for breach of the implied covenant of good faith and fair dealing in the amount of $17,413,686.72.

## NO WAIVER AND RESERVATION OF RIGHTS

120. Plaintiff reserves the right to amend this complaint to assert additional causes of action and claims for relief as may be appropriate due to new or developing information and situations. Omission of a particular claim or cause of action does not constitute a waiver of Plaintiff's right to assert that claim at a later date pursuant to the Bankruptcy Code and the local rules.

## PRAYER FOR RELIEF

WHEREFORE, by reason of the foregoing, Plaintiff requests that the Court enter judgment[4]:

(1) On the First Claim for relief, (a) avoiding the Two-Year Avoidable Transfers free and clear of any interest of Defendant, (b) directing that the Two-Year Avoidable Transfers be set

---

[4] The claims for relief are pled in the alternative, and not cumulatively, such that the Trustee does not seek to recover more than the amount of the Four-Year Avoidable Transfers from Defendant.

aside, (c) ordering that Plaintiff recover from Defendant the value of the Two-Year Avoidable Transfers, or $10,103,275.78;

(2) On the Second Claim for relief, (a) avoiding the Four-Year Avoidable Transfers free and clear of any interest of Defendant, (b) directing that the Four-Year Avoidable Transfers be set aside, (c) ordering that Plaintiff recover from Defendant the value of the Four-Year Avoidable Transfers, or $17,413,686.72;

(3) On the Third Claim and Fourth Claims for relief, (a) directing Defendant to turnover the full amount of the Account Credit, or $11,681,722.81;

(4) On the Fifth, Sixth and Seventh Claims for relief, for damages in the amount of no less than $17,413,686.72;

(5) On all claims for relief, awarding Plaintiff prejudgment interest as permitted by law, costs of suit, and such other and further relief as is just and proper.

SARACHEK LAW FIRM
Special Counsel for the Chapter 7 Trustee

DATED: March 21, 2023

By: /s/ Joseph E. Saracheck
Joseph E. Saracheck, Esquire
Zachary E. Mazur, Esquire

McDOWELL LAW, PC
Attorneys for Chapter 7 Trustee

DATED: March 21, 2023

By: /s/ Joseph A. McCormick, Jr.
Joseph A. McCormick, Jr., Esquire

19